1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4

5  - - - - - - - - - - - - - X
   UNITED STATES OF AMERICA    )    06-CR-6042(L)
6                              )
   vs.                         )
7                              )    Rochester, New York
   JOSE DE LA ROSA,            )    October 14, 2008
8              Defendant.      )    1:30 p.m.
   - - - - - - - - - - - - - X
9

10

11                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE DAVID G. LARIMER
12                   UNITED STATES DISTRICT JUDGE

13

14                    TERRANCE P. FLYNN, ESQ.
                      United States Attorney
15                    BY: FRANK H. SHERMAN, ESQ.
                      Assistant United States Attorney
16                    6200 Federal Building
                      Rochester, New York 14614
17

18

19                    M. KIRK OKAY, ESQ.
                      The Okay Law Firm
                      P.O. Box 622
20                    Batavia, New York 14020
                      Appearing on behalf of the Defendant
21

22  ALSO PRESENT:        Felipe de Chateuvieux, Interpreter

23

    COURT REPORTER:      Christi A. Macri, FAPR, RMR, CRR, CRI
24                       Kenneth B. Keating Federal Building
                         100 State Street
25                       Rochester, New York 14614-0222

1                    P R O C E E D I N G S

2                      *        *        *

3         (WHEREUPON, the defendant is present).

4         THE COURT: Good afternoon.

01:42PM  5         MR. SHERMAN: Good afternoon.

6         THE COURT:  Mr. De La Rosa needs an interpreter, so we

7    will swear in Mr. De Chateuvieux.

8         (WHEREUPON, the interpreter was sworn).

9         THE COURT: Good afternoon, Mr. De La Rosa.

01:42PM 10         THE DEFENDANT: Good afternoon, Judge.

11         THE COURT: And to counsel, of course.

12         MR. OKAY: Good afternoon, Your Honor.

13         All right, this case, as we know, is scheduled for trial

14    and jury selection tomorrow.  We had a pretrial last week and it

01:43PM 15    appeared at that time that we were going to trial.

16         And the Court, as I suspect you did, spent some time

17    over the weekend preparing for that event, but I was advised this

18    morning that maybe there is to be a change of plea this afternoon.

19         Is that the case?

01:43PM 20         MR. OKAY: Your Honor, Mr. De La Rosa's indicated that he

21    will enter into a plea pursuant to a written plea agreement.

22         THE COURT: All right.  Which I don't think I have,

23    but --

24         MR. SHERMAN: I have an extra copy, Your Honor.

01:43PM 25         THE CLERK:  Thank you.

1          THE COURT: All right, Mr. De La Rosa, is that your

2     understanding as to why we're here this afternoon, because you are

3     prepared to plead guilty to the one count indictment pursuant to a

4     plea agreement?

01:44PM  5          THE DEFENDANT: Yes.

6          THE COURT: All right.  We need to take some time to go

7     through this, especially in light of the lateness that this plea

8     is offered, but whether it occurs today or a month ago, we still

9     would go through the same process.  And we take some time to make

01:44PM  10    sure that you do understand what's in this plea agreement; we talk

11    to you to make sure you understand the potential punishment that

12    could result if you plead guilty; and we also want to make sure

13    you understand all of your legal and constitutional rights in

14    connection with this proceeding.  So as we go through this, if you

01:44PM  15    have any questions, now's the time to ask them.

16          Do you understand all of that?

17          THE DEFENDANT: Yes.

18          THE COURT: This is a court proceeding, you will be asked

19    questions and I expect that you'll answer those questions

01:45PM  20    truthfully.  To make sure you understand the importance of that, I

21    want to take your statements here under oath.  So I'd ask you to

22    raise your right hand as a witness and I will swear you in.

23          (WHEREUPON, the defendant was sworn).

24          THE COURT: All right, I've been just handed a plea

01:45PM  25    agreement of some 19, 20 pages.  Have you reviewed the plea and

1  the plea agreement with your lawyer?

2          THE DEFENDANT: Yes, sir.

3          THE COURT: Is it fair to say that you've talked to your

4  lawyer, Mr. Okay, several times during the past week or so in

01:45PM  5  deciding whether to go to trial or to plead guilty; is that a fair

6  statement?

7          THE DEFENDANT: Yes, sir.

8          THE COURT: And I take it after all that discussion

9  today, you've elected to plead guilty according to this plea

01:46PM  10  agreement; is that what you wish to do here today?

11          THE DEFENDANT: Yes, sir.

12          THE COURT: All right.  Tell me how old you are now, sir.

13          THE DEFENDANT: 35 years old.

14          THE COURT: All right.  And how far did you get in your

01:46PM  15  schooling?

16          THE DEFENDANT: I finished high school and I have some

17  university, college degrees.

18          THE COURT: All right.  Was your high school in this

19  country or --

01:46PM  20          THE DEFENDANT: The Dominican Republic.

21          THE COURT: Okay.  Are you taking any medication or drugs

22  today which you think affect your mind and your clearness of

23  thought?

24          THE DEFENDANT: No, sir.

01:46PM  25          THE COURT: All right.  Well, I've just been handed this

1    plea agreement, so it's new to me, but, Mr. Sherman, perhaps you

2    could start us off and we'll go through this?

3            Let me ask before we do that, Mr. De Chateuvieux, have

4    you had the opportunity to work as an interpreter interpreting

01:47PM  5    this agreement?

6            THE INTERPRETER: Yes, Your Honor.  I did interpret this

7    several times; and then on Friday or Saturday, October 11, I went

8    and line-by-line interpreted at MCJ.

9            THE COURT: Okay, thank you.

01:47PM  10            And, Mr. Sherman, this is the agreement that we're to

11    speak of as the same one Mr. De Chateuvieux utilized when he

12    talked about this with Mr. De La Rosa?

13            MR. SHERMAN: Yes, it is, Your Honor.

14            THE COURT: All right.  Mr. Sherman, perhaps you can

01:47PM  15    start us off?  Mr. Sherman's going to tell me about this

16    agreement, and I may interrupt him from time to time and ask you

17    if you understand what was just said and you agree to it, all

18    right?

19            THE DEFENDANT: Yes, sir.

01:48PM  20            THE COURT: Mr. Sherman?

21            MR. SHERMAN: Your Honor, the defendant is agreeing to

22    plead guilty to Count 1 of the superseding indictment which

23    charged a violation of Title 21, United States Code, Section 846,

24    specifically, a conspiracy to distribute and possess with intent

01:48PM  25    to distribute 5 kilograms or more of cocaine.

1          That charge carries a mandatory minimum term of

2    imprisonment of 10 years; a maximum possible sentence of a term of

3    imprisonment of life; a fine of $4 million; a mandatory $100

4    special assessment; and a term of supervised release of at least

01:48PM    5    5 years and up to life.

6          THE COURT: All right.  Mr. De La Rosa, there may be

7    other parts of this agreement that effect the sentence and we'll

8    talk about that in a minute, but do you understand that under the

9    statute, a plea to this conspiracy to distribute 5 kilos or more

01:49PM   10    subjects you to a sentence of a minimum term of 10 years

11    imprisonment, and up to life imprisonment; with the related parts

12    of the sentence in terms of fine and supervised release of 5 years

13    to life?

14          Do you understand those maximum and minimum penalties?

01:49PM   15          THE DEFENDANT: Yes, sir.

16          THE COURT: All right.

17          MR. SHERMAN: There is also a forfeiture allegation in

18    the superseding indictment which the defendant is admitting which

19    alleges that $1 million in United States currency is subject to

01:49PM   20    forfeiture as a result of participation in this conspiracy.

21          Mr. De La Rosa would be jointly and severally liable for

22    that amount along with the other members of the conspiracy.

23          THE COURT: Am I correct that there's no money that would

24    actually be handed over?  It would be more in the nature of an

01:49PM   25    entry of judgment?

1          MR. SHERMAN: That's correct, Your Honor.

2          THE COURT: All right.  Do you understand that, sir?

3          THE DEFENDANT: Yes, sir.

4          MR. SHERMAN: Your Honor, during the time that

01:50PM  5   Mr. De La Rosa is on supervised release, if he were to violate any

6   of the terms or conditions of his supervised release, he could be

7   required under the agreement to serve in prison all or part of the

8   term of supervised release up to 5 years without credit for time

9   previously served on supervised release.

01:50PM  10          THE COURT: All right.  Do you understand that, sir?

11          THE DEFENDANT: Yes, sir.

12          MR. SHERMAN:  The parties understand that the sentencing

13   guidelines are not binding on the Court, but that the Court must

14   consider them.

01:50PM  15          And the parties have done a guidelines calculation,

16   which is set forth in Section III of the agreement, starting on

17   page 4.  As a result of that calculation, which includes an

18   offense level -- a base offense level of 36, and a three level

19   enhancement for role in the offense, the parties compute that

01:51PM  20   Mr. De La Rosa would come out as a total offense level of 36, and

21   a criminal history category of I, which would make his guideline

22   sentencing range a term of imprisonment of 188 to 235 months; a

23   fine of $20,000 to $4 million; a $100 special assessment; and a

24   period of supervised release of 5 years.

01:51PM  25          Notwithstanding those guideline calculations, it is the

1  statutory minimum and maximum penalties that we've already

2  discussed that ultimately control.

3          THE COURT: All right.  Mr. De La Rosa, you understand

4  that based on your very low criminal history category of I, and

01:51PM  5  based on the amount drugs and the nature of the offense, the

6  lawyers believe your guideline range is 188 to 235 months,

7  together with the fine range and supervised release range which is

8  all discussed at paragraph 12?

9          Do you understand that guideline range?

01:52PM  10          THE DEFENDANT: Yes, sir.

11          THE COURT: And, again, I know we're going to talk about

12  Section IX, which could effect that, but if that section does not

13  apply, you need to understand the guideline range is what it is,

14  188 to 235 months.

01:52PM  15          Do you understand that?

16          THE DEFENDANT: Yes, sir.

17          THE COURT: The Court, that's me, must consider the

18  guidelines, but it's not mandatory.  But this agreement also

19  provides that neither the Government nor your lawyer can ask me

01:52PM  20  for a non-guideline sentence, except insofar as it relates to

21  Section IX, the cooperation section.

22          Do you understand that?

23          THE DEFENDANT: Yes, sir.

24          THE COURT: Anything else about the guidelines?  If not,

01:53PM  25  we might talk about the appeal waiver.

1      MR. SHERMAN: Yes, Your Honor.  There is an appeal waiver

2 which is set forth on page 18 and which provides that the

3 defendant will waive any right to appeal or collaterally attack

4 any component of the sentence if it falls within or is less than

01:53PM  5 the sentencing range set forth in paragraph 12 of the agreement.

6      The Government makes a similar waiver for any sentence

7 that is within the range set forth in paragraph 12 or above it.

8      THE COURT: Do you understand that, Mr. De La Rosa?

9      THE DEFENDANT: Yes, sir.

01:54PM  10      THE COURT: That means any sentence I impose, 235 months

11 or less, by this agreement you give up the right to challenge on

12 appeal or by a collateral proceeding called "*habeas corpus*."

13      Do you understand that?

14      THE DEFENDANT: Yes, sir.

01:54PM  15      THE COURT: And that means -- let's suppose there is some

16 information that you provide under Section IX, the cooperation

17 agreement, and there's some application for me to reduce the

18 sentence.  As long as my final sentence is less than 235 months,

19 you can't appeal that, even if you think I should have given you

01:54PM  20 more of a reduction.

21      Do you understand that?

22      THE DEFENDANT: Yes, sir.

23      THE COURT: Okay, I think it's just good to put all this

24 out so there's no confusion later on.

01:55PM  25      Do you want to talk now about the cooperation provision?

1        MR. SHERMAN: Yes, I did just want to mention, Your

2   Honor, there is on page 8 a section relating to the fact that

3   Mr. De La Rosa is not a citizen of the United States, and

4   acknowledging that he's aware that conviction in this case may

01:55PM    5   have some effect on his status in the United States.

6        THE COURT: Do you understand that, Mr. De La Rosa?  That

7   a conviction of this crime and a sentence would effect your

8   ability to remain in this country?

9        Do you understand that?

01:55PM   10        THE DEFENDANT: Yes, sir.

11        THE COURT: Has there been an Immigration or

12   Homeland Security detainer filed yet?

13        MR. SHERMAN: Yes, there is a detainer on him, Your

14   Honor.

01:56PM   15        THE COURT: Do you understand that's a separate

16   proceeding before a separate judge, but --

17        THE DEFENDANT: Yes, sir.

18        THE COURT: -- I would assume a conviction of this type

19   would result in his deportation?

01:56PM   20        MR. SHERMAN: In all likelihood it would, Your Honor.

21   And, in fact, there were proceedings pending against

22   Mr. De La Rosa before he was arrested in this case.

23        THE COURT: All right.  Do you understand that, sir?

24        THE DEFENDANT: Yes.

01:56PM   25        THE COURT: All right.  That would be in the

1    Dominican Republic, I assume?

2              MR. SHERMAN: Again, that's not my bailiwick, but I would

3    assume that they would send him back to the Dominican Republic,

4    which is his country of origin.

01:56PM  5              THE COURT: All right.  So you understand that, sir?

6    That this conviction would most likely result in your deportation

7    at some point.

8              Do you understand?

9              THE DEFENDANT: Yes, sir.

01:57PM  10             THE COURT: Okay.  Your Honor, we did mention earlier the

11   forfeiture, and there is a section starting on page 10 of the

12   agreement which does provide that a judgment of $1 million will be

13   entered against the defendant as part of the resolution of this

14   case.

01:57PM  15             With respect to Section IX, the cooperation section,

16   Your Honor, the parties have agreed that if Mr. De La Rosa

17   complies with all the terms and conditions of this agreement and

18   provides substantial assistance in the investigation or

19   prosecution of other persons who have committed offenses, the

01:57PM  20   Government will move the Court at sentencing to depart downwards

21   from the guidelines under Section 5K1.1, or it may also ask the

22   Court to impose a sentence below the statutory minimum term of

23   imprisonment pursuant to Title 18, United States Code,

24   Section 3553(e).

01:58PM  25             The Government reserves the right whether to make the

1  motion under both provisions or just one, and the defendant

2  understands that the making of that motion is within the sole

3  discretion of the United States Attorney's Office.

4        Likewise, the defendant understands that the decision to

01:58PM  5  grant such a motion, and the ultimate extent of any downward

6  departure are matters solely within the discretion of the Court.

7        It's further agreed and understood by the defendant that

8  under no circumstances will the United States Attorney's Office

9  make a downward departure motion that recommends a sentence less

01:58PM  10  than the low end of the range for guidelines offense level 26,

11  which in practical terms is 63 months.

12        THE COURT: Is what?

13        MR. SHERMAN: 63 months.  There is no commitment to make

14  that recommendation, but that is the lowest that the Government

01:59PM  15  anticipates recommending based on whatever assistance the

16  defendant provides.

17        THE COURT: Well, first off, for that recommendation, the

18  motion by the Government would have to be made under the statute

19  as well as under 5K?

01:59PM  20        MR. SHERMAN: Yes, correct, both.  So we have not

21  committed to making such a recommendation, but the defendant's

22  been told that we think there is the potential for him to earn

23  that type of a recommendation if he fulfills all his obligations

24  with regard to the assistance.

01:59PM  25        THE COURT: All right.  Well, Mr. De La Rosa, do you

1     think you understand this cooperation aspect here?

2          THE DEFENDANT: Yes.

3          THE COURT: Have you carefully reviewed Section IX of the

4     plea agreement with your lawyer?

02:00PM  5          THE DEFENDANT: Yes.

6          THE COURT: And you understand there are three people

7     involved in this?  You, the Government and then me.

8          THE DEFENDANT: Yes.

9          THE COURT: And you understand that obviously you go

02:00PM 10     first in the sense that you're under no obligation under the law

11     to cooperate, but you've decided to do that.  And I advise you

12     that you should do that fully and completely because when you're

13     through, then the Government's going to have to decide whether you

14     have provided substantial assistance and whether they want to move

02:00PM 15     for a departure under the guidelines which allows me to sentence

16     below the guideline range; or the Government also reserves the

17     right to move for a departure under the statute, and if they do

18     that, then I can sentence you below 10 years.

19          But Mr. Sherman has just said that at this point there's

02:01PM 20     no promise that they would move under both or either because it

21     depends on your cooperation and whether it is full and complete

22     and substantial.

23          Do you understand that?

24          THE DEFENDANT: Yes.

02:01PM 25          THE COURT: The Government has to act in good faith here

1  because this is a contract.  But you also should understand if you

2  do everything you're supposed to do and the Government files

3  either the motion under 5K or under the statute, Section 3553(e),

4  then it's up to me to decide what to do with that motion: Whether

02:01PM  5  to grant it, grant it in part, deny it.  All those options are

6  open to me.

7          Do you understand that?

8          THE DEFENDANT: Yes, sir.

9          THE COURT: So I have a lot of discretion.  If the

02:02PM  10  Government says, Judge, we want you to sentence Mr. De La Rosa to

11  10 years, and the motion is made under both the statute and the

12  guidelines, I could grant that motion or I could reduce it even

13  further if I wanted to.

14          Do you understand that?

02:02PM  15          THE DEFENDANT: Yes, sir.

16          THE COURT: But it works the other way, too.  The

17  Government and your lawyer could ask me to grant a reduction to a

18  certain level and I could decide I don't think that I will do

19  that.

02:02PM  20          Do you understand that?

21          THE DEFENDANT: Yes, sir.

22          THE COURT: So Mr. Sherman has told you that under no

23  circumstance will the Government ask me to impose a sentence of

24  less than 63 months.

02:03PM  25          Do you understand that?

1        THE DEFENDANT: Yes, sir.

2        THE COURT: I don't think you should take Mr. Sherman's

3 statement as a promise that that's what they will recommend.  He's

4 saying that's sort of the floor; the Government won't recommend

02:03PM   5 anything below that.

6        Do you understand that?

7        THE DEFENDANT: Yes, sir.

8        THE COURT: Now, in spite of what they recommend, I still

9 have some discretion to go down or up.

02:03PM   10        Do you understand that?

11        THE DEFENDANT: Yes, sir.

12        THE COURT: And I would never tell you today what I'm

13 going to do, mostly because I don't know enough about you and I

14 certainly don't know what you might do in the future relative to

02:03PM   15 cooperation.

16        Do you understand that?

17        THE DEFENDANT: Yes, sir.

18        THE COURT: Do you think you have any promise or

19 understanding as to what the sentence will be from the Court, from

02:03PM   20 anybody, your lawyer, the Government or the law enforcement

21 officers?  Any promise do you think you have?

22        THE DEFENDANT: No, nobody has promised me.

23        THE COURT: Okay.  Well, that's good because I don't know

24 what I'm going to sentence you to so I don't know how anybody

02:04PM   25 could promise you.

1          All right, anything else about the cooperation section?

2          MR. SHERMAN: Your Honor, only that there are obviously

3     specific provisions in the agreement as to what happens if

4     Mr. De La Rosa were to breach his obligation under that section,

02:04PM  5     and I'm not going to go through all those now, but as

6     Mr. De Chateuvieux has said, they've gone through this plea

7     agreement line-by-line and I assume that Mr. De La Rosa

8     understands what happens if he breaches.

9          THE COURT: All right.  You also understand,

02:04PM  10    Mr. De La Rosa, that once you enter the plea today, you don't have

11    a right to change your mind tomorrow or next week or next month

12    about pleading guilty?

13         Do you understand that?

14         THE DEFENDANT: Yes, sir.

02:05PM  15         THE COURT: And that means, for instance, if down the

16    road you're unhappy with the sentence that I give to you, you

17    can't tell me at that point, well, Judge, I change my mind about

18    pleading guilty.  It doesn't work that way.

19         Do you understand that?

02:05PM  20         THE DEFENDANT: Yes, sir.

21         THE COURT: Okay.  Let's talk a little bit about the

22    elements and the factual basis.

23         MR. SHERMAN: Your Honor, as charged in Count 1, there

24    would be three elements which the Government would have to prove

02:05PM  25    beyond a reasonable doubt.

1          The first is the existence of the conspiracy charged in

2  Count 1 of the superseding indictment.

3          The second element would be that the defendant knowingly

4  became a member of that conspiracy.

02:05PM  5          And the third element would be that a quantity of at

6  least 5 kilograms of a mixture or substance containing cocaine was

7  reasonably foreseeable to the defendant as being within the scope

8  of the conspiracy.

9          THE COURT: All right, sir, those are the elements or the

02:06PM  10  things the Government was prepared to prove starting tomorrow at

11  the trial.

12          Do you understand those elements of this offense of

13  conspiracy?

14          THE DEFENDANT: Yes.

02:06PM  15          THE COURT: All right.  Sir, there is a section here

16  called the factual basis, which is set forth here at paragraph 3

17  and paragraph 4 -- excuse me, page 3 and page 4 of the agreement.

18          Do you remember going over those when the interpreter

19  was helping you?

02:06PM  20          THE DEFENDANT: Yes.

21          THE COURT: And we'll go over them in a bit, but we'll

22  start with this: Do you remember that those are true and accurate

23  statements about what your conduct was with Mr. Jose

24  Castillo-Martinez and Frank DeJesus?

02:07PM  25          THE DEFENDANT: What was the question again?

1          THE COURT: In these paragraphs Mr. Jose

2    Castillo-Martinez and Mr. Frank DeJesus are mentioned in

3    connection with some activities that you participated in.

4          Do you remember when you went over these whether they

02:07PM  5    were true and accurate statements about your conduct?

6          THE DEFENDANT: Yes.

7          THE COURT: All right.  Specifically -- just because we

8    have a language issue here, that we don't speak Spanish and you

9    don't speak or read English -- this agreement says in furtherance

02:07PM  10   of the conspiracy in about November of 2002, you spoke with Jose

11   Castillo-Martinez and Frank DeJesus and others in the

12   New York City, Passaic, New Jersey area concerning large

13   multi-kilogram quantities of cocaine being distributed to you and

14   to others.

02:08PM  15         Did you have those conversations with those folks?

16         THE DEFENDANT: Yes.

17         THE COURT: And there's no question that you know

18   Mr. Jose Castillo-Martinez?  You know him, don't you?

19         THE DEFENDANT: Yes.

02:08PM  20         THE COURT: And you know him to be a person involved in

21   distribution of drugs?

22         THE DEFENDANT: Yes.

23         THE COURT: And Mr. Frank DeJesus, you know him as well?

24         THE DEFENDANT: Yes.

02:08PM  25         THE COURT: And he also is involved in this business of

1  assisting in the distribution of drugs?

2          THE DEFENDANT: Yes.

3          THE COURT: Paragraph 5(b) here says that in furtherance

4  of this conspiracy, around November 2002 and in February of 2003

02:08PM   5  you met at various times with Mr. DeJesus and

6  Mr. Castillo-Martinez and others regarding the payment for drugs

7  that you got back in November of 2002.

8          Did you meet with those people about getting money

9  together to pay for the drugs that you received?

02:09PM   10          THE DEFENDANT: Yes.

11          THE COURT: All right.  The agreement also provides here

12  that the drug quantity that you're charged with as far as relevant

13  conduct is at least 50, but not more than 150 kilograms of cocaine

14  is the drug quantity that affects the guidelines here.  That

02:09PM   15  doesn't mean that you yourself handled 50 kilos, but that you did

16  or you understood and reasonably foresaw that others in this

17  business handled, possessed and distributed that amount of drugs.

18          Do you understand that between 50 and 150 kilogram

19  quantity is what's involved here?

02:10PM   20          THE DEFENDANT: Yes.

21          THE COURT: This factual basis is a very brief summary of

22  what I expect the Government would prove starting tomorrow if this

23  case went to trial.

24          I ask the Government if there's anything else by way of

02:10PM   25  proffer as to the factual basis the Government would articulate at

1   this time?

2           MR. SHERMAN: No, Your Honor.  We have previously set

3   forth to Mr. De La Rosa much of the anticipated proof, which would

4   include that he did take delivery in November of 2002 of a

02:10PM   5   substantial amount of cocaine arranged through Jose

6   Castillo-Martinez, and that over the next several months he was in

7   contact with Mr. DeJesus and Mr. Castillo-Martinez about

8   completing payment for that quantity of cocaine, as well as for

9   some cocaine that he had previously received in Chicago that had

02:11PM   10   been arranged by Mr. Castillo-Martinez also.

11           I don't believe it's necessary for today's purposes to

12   go into all the details, but that would flesh out a little bit

13   those paragraphs that you've already referred to.

14           THE COURT: Do you understand, Mr. De La Rosa, that the

02:11PM   15   Government would expect to introduce evidence of that nature

16   before the jury?

17           THE DEFENDANT: Yes.

18           THE COURT: I understand that Mr. DeJesus and others were

19   also prepared to testify in this case?

02:11PM   20           MR. SHERMAN: Yes, we have also indicated to

21   Mr. De La Rosa that both Mr. Castillo-Martinez and Mr. DeJesus

22   would be witnesses at his trial for the Government.

23           THE COURT: All right.  On the cooperation, just jumping

24   back to that, is there any expectation that Mr. De La Rosa may be

02:12PM   25   asked at some point to testify at a grand jury or trial

1  proceeding?

2          MR. SHERMAN: Yes.

3          THE COURT: All right.  Mr. De La Rosa, you understand

4  that's part of the cooperation package?

02:12PM  5          THE DEFENDANT: Yes.

6          THE COURT: All right, Mr. De La Rosa, we've been doing

7  all the talking here.  Do you have any questions so far of me or

8  your lawyer, Mr. Okay?

9          THE DEFENDANT: No.

02:12PM  10          THE COURT: All right.  Anything else about the agreement

11  that we should talk about, gentlemen, before I talk to

12  Mr. De La Rosa about his legal rights?

13          MR. SHERMAN: No, Your Honor.

14          MR. OKAY: No, sir.

02:13PM  15          THE COURT: All right.  Well, Mr. De La Rosa, a couple of

16  questions.  Has anybody forced you or threatened you to get you to

17  come in here and take this plea?

18          THE DEFENDANT: No.

19          THE COURT: All right.  One of the things I do in every

02:13PM  20  case is to make sure the person who pleads guilty understands all

21  of his rights, and that the first right we talk about is the right

22  to have a trial and have a jury decide if you're convicted or if

23  you're innocent or guilty of this charge.

24          In your case this might not be necessary because we,

02:13PM  25  after considerable period of time, we have scheduled your case to

1   start tomorrow morning, as a matter of fact.  But I want to still

2   make sure on the record you understand that there's no rule in our

3   system of justice here in this country that a person has to step

4   up and plead guilty.

02:13PM  5       Do you understand that you have a right to have a jury

6   trial and have the jury determine whether you're innocent or

7   guilty of this charge?

8       THE DEFENDANT: Yes.

9       THE COURT: By "jury trial" I mean a public proceeding

02:14PM 10  that would take place here in this courtroom.  You would have to

11  be here at all parts of the trial.  You would have the help of

12  your lawyer, you would have the help of an interpreter.

13       You would get to listen to all the evidence, much of it

14  of course you've already reviewed in the pretrial setting.

02:14PM 15       Through your lawyer you could cross-examine any witness,

16  whether it was one of your co-conspirators or some other police

17  witness.  And I think you received or your lawyer did a witness

18  list of the 14 or so people scheduled to testify; you and your

19  lawyer could cross-examine those witnesses at trial.

02:14PM 20       Do you understand that?

21       THE DEFENDANT: Yes.

22       THE COURT: Through the subpoena power of the Court you

23  could subpoena witnesses to come testify for you or you could

24  subpoena evidence to be used at your trial.  You yourself could

02:15PM 25  produce witnesses.

1          And you also have the right to take the witness stand

2     and testify in your defense if you wish to do that, but nobody --

3     including the Court or the Government -- can make a person take

4     that witness stand and testify if that person is the defendant.

02:15PM  5          Do you understand that?

6          THE DEFENDANT: Yes, sir.

7          THE COURT: And if you did go to trial and testify -- or

8     rather decided not to testify, I would be required to tell the

9     jury that they couldn't hold that fact against you, that is, the

02:15PM 10    fact that you decided not to testify.

11          And I guess to sum up all these trial rights, the

12    Government would have to prove your guilt by introducing evidence,

13    live witnesses, documents, physical evidence, wiretaps, and

14    convince a jury by what we call "proof beyond a reasonable doubt."

02:16PM 15    That means the Government would have to remove any reasonable

16    doubt that might exist in any of the minds of the jurors.

17          Do you understand that's the standard we have here for

18    proving criminal cases --

19          THE DEFENDANT: Yes.

02:16PM 20          THE COURT: -- if you continue?  Your desire to plead

21    guilty and plead guilty here in a minute, do you understand that

22    all those trial rights that I mentioned will be given up or waived

23    because when one pleads guilty, we don't have a trial?

24          Do you understand that?

02:16PM 25          THE DEFENDANT: Yes.

1          THE COURT: And you understand if you plead guilty, the

2     only thing left for you is to cooperate, if you wish to, and for

3     me then is to decide after a few months what the fair sentence

4     should be for you under all the circumstances?

02:16PM   5          Do you understand that?

6          THE DEFENDANT: Yes, sir.

7          THE COURT: Mr. Okay has been your lawyer in this case

8     and has worked with you.  Are you satisfied with his help and

9     legal advice in this matter?

02:17PM   10         THE DEFENDANT: Yes, sir.

11         THE COURT: Do you have any problems or complaints or

12    beefs between you two that we need to kind of sort out here?

13         THE DEFENDANT: No, sir.

14         THE COURT: Okay.  I ask you one more time if you have

02:17PM   15    any questions?  If not, we are at a stage where we do some paper

16    signing.

17         Any questions, sir, you have of me or your lawyer,

18    Mr. Okay?

19         THE DEFENDANT: No, sir.

02:17PM   20         THE COURT: All right.  Unless the lawyers have anything,

21    we are presented with the signing of the plea agreement, which

22    Mr. De Chateuvieux has said he read to you and translated for you

23    last week on at least one occasion.

24         Sir, are you prepared to sign that agreement this

02:18PM   25    afternoon?

1          THE DEFENDANT: Yes, sir.

2          THE COURT: I'd ask you to do that.

3          THE INTERPRETER: Your Honor, I have this signed from me.

4   Do you want me to sign the new one or just attach this one?

02:18PM  5          THE COURT: Why don't you sign the one that

6   Mr. De La Rosa just signed?

7          THE INTERPRETER: Do you want me to put the actual date

8   of the translation or today's date?

9          THE COURT: The date you actually read it to him.

02:18PM  10         THE INTERPRETER: It was October 11th when I read it to

11  him.

12         THE COURT: All right, so we have one document.  Why

13  don't you write that on the document we have today?

14         THE INTERPRETER: I will.

02:18PM  15         THE COURT: Seems to be all right.

16         Mr. De La Rosa has signed this plea agreement; and we

17  also have the certification of the interpreter that he did

18  translate and interpret this in full for Mr. De La Rosa on

19  October the 11th, which was this past Saturday.  So we'll direct

02:19PM  20  that that be --

21         MR. SHERMAN: Your Honor, I think we would ask to mark

22  that as a Court exhibit.

23         THE COURT:  All right, we'll mark this as Court

24  Exhibit 1 and return it to the Government to retain as an exhibit;

02:19PM  25  and copies only to be made available on request if Mr. Okay or

1   Probation want it.

2          MR. OKAY: No objection.

3          THE COURT: Okay.  All right, sir, the next matter is for

4   me to read the charge to you and then ask you how you plead.

02:20PM  5          The charge is, sir, that beginning in or about June 2002

6   and up to December of 2004, in this district, you -- together with

7   Marcelo Montilla, Roberto Olivo-Estrella and others, that you did

8   knowingly conspire, combine and agree together, with others, to

9   commit drug crimes against the United States, that is, to possess

02:20PM  10  with intent to distribute and to distribute 5 kilograms or more of

11  a detectable amount of cocaine.

12          As to that count how do you plead at this time, guilty

13  or not guilty?

14          THE DEFENDANT: Guilty.

02:20PM  15          THE COURT: All right, there is a forfeiture allegation

16  here in this indictment which indicates that you agree, together

17  with others, to forfeit to the United States the sum of $1 million

18  as a result of the drug activity mentioned, and that a judgment

19  would be entered against you in that amount.

02:21PM  20          Do you understand that?

21          THE DEFENDANT: Yes, sir.

22          THE COURT: All right, after discussing this with

23  Mr. De La Rosa, I believe he's competent and capable of entering a

24  plea; the plea is knowing and voluntary; there certainly appear to

02:21PM  25  be facts to support the plea.

1          Therefore, I will accept the guilty plea and order a

2     presentence report.

3          And we should schedule the matter -- are we ready to

4     schedule the matter for sentencing?

02:21PM  5          MR. SHERMAN: We're going to need some time, Your Honor.

6          MR. OKAY: I would agree with that.

7          THE COURT: Give me a suggested date, or a month or a

8     year.

9          MR. SHERMAN: At least four months.

02:22PM  10         MR. OKAY: I think that would -- I don't think we need to

11    take another year, Your Honor.  I think four months might be

12    adequate.

13         THE COURT: Adequate?

14         MR. OKAY: Yes.

02:22PM  15         THE COURT: All right.  Well --

16         MR. SHERMAN: With the understanding that we may have to

17    come back with an adjournment request.

18         THE COURT: Well, I'm going to put it into April.  But,

19    Mr. Okay, if you and your client feel aggrieved and want to move

02:22PM  20    this sentence up, let me know and I can accommodate you.

21         To try to eliminate unnecessary requests for

22    adjournment, I'm going to put it into April, but certainly -- just

23    because I anticipate with cooperation it may take some time.

24         Mr. Okay, you and/or the Government can certainly seek

02:22PM  25    to get the case on my sentencing calender much earlier, and I

1   could do it in relative short order, if necessary.

2           MR. OKAY: Thank you very much, Your Honor.

3           THE COURT: Ms. Rand, so why don't we pick a sentencing

4   date?  Let's see, the 12th is Easter, so maybe --

02:23PM  5           THE CLERK:  How about April 28th at 3 o'clock?

6           THE COURT: All right, April 28th.  Mr. De La Rosa, that

7   seems like a long time, but it's put out that far to assist you.

8           And as I told your lawyer, if you all want to move this

9   sentence up, we can certainly do that.  But for now it will be

02:23PM  10  April 28th at 3 o'clock for sentencing proceedings.

11          And if there are any sentencing materials, my rule

12  requires me to get it, I think, four days beforehand.

13          All right, anything else?  We will cancel the jury for

14  tomorrow.

02:24PM  15          All right, thank you, sir.  I think I did have the

16  pretrial submissions, Mr. De La Rosa, and I reviewed much of the

17  evidence and I think this is probably a case in your case, in

18  terms of potential penalty, you have the benefit to get some

19  benefit by doing this, which had you gone to trial would not have

02:24PM  20  been there.  And for what it's worth, I think the evidence against

21  you is pretty strong, and I think the kind of evidence that would

22  make an impression on a jury because of the drug amounts and the

23  money and so forth, kidnappings.  So your lawyer worked hard on

24  your behalf.  Thank you.

02:24PM  25          MR. OKAY: Thank you very much, Your Honor.

1          (WHEREUPON, the proceedings adjourned at 2:24 p.m.)

2                          *   *   *

3                     CERTIFICATE OF REPORTER

4

5      I certify that the foregoing is a correct transcript to the

6  best of my ability of the record of proceedings in the

7  above-entitled matter.

8

9  S/ Christi A. Macri

10  Christi A. Macri, FAPR-RMR-CRR-CRI
    Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25