1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4

5  - - - - - - - - - - - - - - X
   UNITED STATES OF AMERICA    )    06-CR-6042(L)
6                              )
   vs.                         )
7                              )    Rochester, New York
   JOSE DE LA ROSA,            )    November 3, 2010
8             Defendant.       )    3:00 p.m.
   - - - - - - - - - - - - - - X
9

10

                        TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE DAVID G. LARIMER
                   UNITED STATES DISTRICT JUDGE
12

13

14                    WILLIAM J. HOCHUL, JR., ESQ.
                      United States Attorney
15                    BY: FRANK H. SHERMAN, ESQ.
                      Assistant United States Attorney
16                    6200 Federal Building
                      Rochester, New York 14614
17

18                    M. KIRK OKAY, ESQ.
                      The Okay Law Firm
19                    P.O. Box 622
                      Batavia, New York 14020
20                    Appearing on behalf of the Defendant

21
   ALSO PRESENT:      Marinella Catalfamo, Interpreter
22                    Kerry Chartier, U.S. Probation

23
   COURT REPORTER:    Christi A. Macri, FAPR, RMR, CRR, CRI
24                    Kenneth B. Keating Federal Building
                      100 State Street
25                    Rochester, New York 14614-0222

<pre>
           1                    P R O C E E D I N G S

           2                      *         *         *

           3              (WHEREUPON, the defendant is present).

           4              THE COURT: Hello.

03:10PM    5              MR. OKAY: Good afternoon.

           6              THE COURT: Mr. De La Rosa is here.  I guess we need an

           7    interpreter, so we'll swear in Ms. Catalfamo.

           8              (WHEREUPON, the interpreter was sworn).

           9              THE COURT: All right, good afternoon, Mr. De La Rosa.

03:10PM   10              THE DEFENDANT: Good afternoon.

          11              THE COURT: The Court put this on the calender today for

          12    several requests, for several reasons.  I certainly understand

          13    that Mr. De La Rosa entered his guilty plea over two years ago,

          14    which is a long time.  He entered it pursuant to a plea agreement

03:11PM   15    which provided some very serious penalties, but also contained a

          16    cooperation provision.

          17              And I guess I assumed that for at least some of the

          18    delay, it was caused to make sure Mr. De La Rosa gets whatever

          19    credit might be coming.  So, I guess, I mean, I share in the

03:12PM   20    concern that this man has pleaded guilty two years ago and he

          21    still hasn't been sentenced; he's sitting in a maximum security

          22    facility.

          23              I've got the plea agreement right here.  I mean, I can

          24    sentence him tomorrow, but I'm not sure that would be perhaps in

03:12PM   25    his best interest.
</pre>

3

1           So maybe, Mr. Okay and Mr. Sherman -- well, I don't

2   know.  Maybe I should hear from Mr. De La Rosa.  I certainly

3   don't -- am not insisting that Mr. De La Rosa speak.

4           Mr. Okay, you may prefer he not, but if he wants to say

03:13PM  5   what concerns him, I'll hear --

6           THE DEFENDANT: Your Honor, my concern is that based on

7   the plea agreement and cooperation, I understand -- I have spoken

8   on several occasions with my attorney here, Mr. Okay.  I have 54

9   months in custody, have been in custody for 54 months now -- 53

03:13PM  10   months.

11           And not -- according to the agreement, but what the plea

12   agreement says from, based on what was explained to me, it is that

13   based on cooperation, the judge would make a reduction at 63

14   months, which based on the 53 months, plus good time, it would

03:14PM  15   come out to 63 months served.

16           I know that the reduction has still not taken place, but

17   I have been sitting and the sentence has been postponed too many

18   times.  And my lawyer is here to attest that I have been flexible

19   as far as cooperation.  And based on the time, reduction of time

03:15PM  20   for cooperation, as far as I understand, I think that we are now

21   at the 63 months, sir.

22           And I have a -- if the Government gives that reduction,

23   I would have my 63 months, I would have to serve -- be in custody

24   four years, six months and 28 days.  At the present time I have

03:16PM  25   been approximately four years and six months have been in.

4

1          On several occasions I have had the chance to talk about

2    it with my attorney, and if the Government allows the reduction,

3    he says that I can -- that I could be right.

4          MR. OKAY: Your Honor, if I can?  Maybe by way of

03:17PM   5    clarification, I could amplify some of the things --

6          THE COURT: Let me just make sure Mr. De La Rosa is

7    finished.  Are you finished?

8          MR. OKAY: Oh, I'm sorry.

9          THE COURT: Are you done?

03:17PM  10          THE DEFENDANT: Yes, I am done, sir.

11          THE COURT:  Okay.  Well, I have several reactions, but I

12    think maybe I should hear from Mr. Okay and Mr. Sherman relative

13    to where we are and anything else.

14          I repeat again, I guess for the third time, this case --

03:18PM  15    like several others involving cooperating defendants -- they often

16    linger for many, many months.  I know that's not for any punitive

17    reason, but it's a fact.

18          So before I say more, Mr. Okay, you wanted to speak to

19    something?

03:18PM  20          MR. OKAY: Yes, thank you.  The point Mr. De La Rosa is

21    trying to make is that in the plea agreement -- the plea agreement

22    has a cooperation section in which the Government has indicated

23    that if Mr. De La Rosa provides substantial assistance to the

24    authorities, the Government may move down to level 63 under the

03:19PM  25    guidelines, the sentencing table.  That would be in criminal

5

1   history category I, the plea agreement, the guideline -- advisory

2   guideline range came out to offense level 32 and criminal history

3   category I, that's 121 to 151 months.

4         Then the cooperation portion contemplates a possible 5K

03:19PM   5   consideration down to level -- down to 63 months, which is the low

6   end of offense level 26 and criminal history category I.

7         Now, Mr. De La Rosa's been in custody since June of 2006

8   so -- and this is assuming that he gets the good time from the

9   Bureau of Prisons, which is discretionary with them.  But there is

03:20PM   10   a chart that we have, that my client has that calculates the good

11   timetable.  I'm sure that the Court may have seen this, I'm sure

12   that the Government knows what this is.  And when you look at a 63

13   month sentence, in months it says, you know, sentence years, 5

14   years, three months and then good time in days, 247 days.  So then

03:20PM   15   it says actual time to serve:  Four years, six months, 28 days.

16         Now, the Government is proposing an adjournment of the

17   sentencing that was scheduled for this afternoon adjourning it

18   until May of 2011.  If that's the case, then assuming

19   Mr. De La Rosa gets the good time, that 63 month timeframe with

03:20PM   20   the good time would run sometime in February of 2011, which is

21   before May of 2011, which is when the -- it now appears the

22   Government is contemplating a -- well, possible 5K down to this

23   golden 63 months that we have had before us since the time that

24   the plea was entered more than two years ago.

03:21PM   25         So my client and I have been discussing the possibility

1   of moving the Court for withdrawal of the guilty plea on the

2   grounds that it will soon become an impossibility of fact to ever

3   get to this 63 months, at least before the time of sentencing.

4           And that essentially is the upshot of, I think, what

03:21PM   5   Mr. De La Rosa is trying to say and the posture that the case is

6   in now.  And we want to continue to do the right thing, we want to

7   continue living up to our obligations under the plea agreement and

8   the cooperation portion and all of that, but as the Court

9   doubtless has gleaned, there's some frustration on the part of the

03:22PM   10   defense.

11           We don't have much power here.  The only power that we

12   have really, the only ace that we have in the hole, so to speak,

13   is that 63 months that the Government put in the cooperation

14   portion of the plea agreement.  And there's no question but that

03:22PM   15   that was an incentive for us to plea because this is a mandatory

16   minimum case, and the only way around that mandatory minimum under

17   the guidelines is to a 5K.

18           So that's where we are.  The Court can do a couple of

19   different things.  It could put the case -- schedule a sentencing;

03:22PM   20   or it could schedule a briefing order for the defense to file an

21   application to withdraw the guilty plea.  We don't want to do that

22   because we don't want to lose our credibility with the Government.

23           But on the other hand, you know, May is, you know, a

24   ways down the road here; it's November 3rd now.  And so that's the

03:23PM   25   posture that we're in.

1              And I spoke with my colleague for the Government and

2   he's indicated to me that if the sentencing were to go forward at

3   this time, and I could be -- this may not still be on the table,

4   but he's indicated to me that at this point the Government would

03:23PM  5   only move on a 5K down to the 10 year mandatory minimum.

6              So those are the parameters of the case as we stand

7   before the Court this afternoon.

8              THE COURT: All right.  I will hear from the Government,

9   but I think Mr. De La Rosa is focusing on the last part of

03:23PM  10   paragraph 29 of the plea agreement that does reference guideline

11   offense level 26.  And I guess assuming we have a criminal history

12   category I, that level 26 under the guidelines which, of course,

13   are advisory, is 63 to 78 months.

14             That language, I don't read it to say anything more than

03:24PM  15   if the Government makes a motion for leniency for a departure, at

16   least as of the date of the drafting of the agreement, the

17   Government is not going to make a motion for anything lower or

18   less than, I guess, the low end of the range, which is 63 months.

19             MR. OKAY: Correct, that's accurate.

03:24PM  20             THE COURT: Wasn't really a promise?

21             MR. OKAY: Right.

22             THE COURT: Certainly it binds this Court as to what this

23   Court could do.

24             And I understand Mr. De La Rosa's concept that if it --

03:25PM  25   focusing on 63, I think he's concerned that pretty soon he's going

8

1    to already have served that 63 months, and then -- and any kind of

2    benefit he sought to get from this agreement would be a nullity

3    because he's already served it.

4              This plea agreement, as the Government often does, the

03:25PM  5    Government must act in good faith and has indicated that in good

6    faith may make a motion under 5K, which deals with the guidelines.

7              But to get below the statutory minimum of 10 years, the

8    Government has to make a motion under the statute,

9    Section 3553(e).  But if the Government does not make that motion

03:26PM  10   under 3553(e), the Court thinks it's done in good faith, then the

11   Court's ability is limited to imposing at least at this time the

12   10 year minimum sentence.

13             There is, of course, a whole other set of procedures

14   which we lawyers refer to as "Rule 35," which means even if the

03:26PM  15   Court were to sentence Mr. De La Rosa today, I might not be able

16   to impose a sentence less than 10 years, but assuming there

17   continues to be cooperation, the rules provide that some time

18   later the Government can come back to me and say, Judge, we think

19   now you should grant Mr. De La Rosa a greater reduction.

03:27PM  20             I can't prevent Mr. De La Rosa from filing motions to

21   withdraw his plea, but I think that, in my view, would be a very

22   risky thing because it could and probably would jeopardize the

23   beneficial parts of this plea agreement, and it might be a sign to

24   the Government that Mr. De La Rosa no longer wants to cooperate.

03:27PM  25             And I don't think after all this time Mr. De La Rosa

9

1  wants to be put in that position.  Withdrawing his plea is not

2  going to get him sentenced any sooner; it probably would result in

3  him being sentenced even later.  So Mr. De La Rosa needs to

4  understand that.

03:27PM  5       I understand his frustration, and I'm sure Mr. Sherman

6  may wish to speak to this as to why we are here two years later

7  without the ability to resolve this, although Mr. Sherman might

8  also want to speak to whether there's some benefit sentencing

9  Mr. De La Rosa now, giving him some benefit, and then leaving open

03:28PM  10  the possibility there could be even more of a benefit under our

11  Rule 35.

12       But, Mr. Sherman, what say you?

13       MR. SHERMAN: Your Honor, I understand Mr. De La Rosa's

14  frustration also.  This has been an ongoing conversation with him

03:28PM  15  for well over a year concerning the timing of his sentencing, and

16  I believe we may even have appeared in front of the Court once

17  before about this issue.

18       As the Court noted, the plea agreement when it was

19  negotiated two years ago outlined the best case scenario from the

03:28PM  20  Government's viewpoint of what Mr. De La Rosa potentially could

21  earn in the way of credit.  And Mr. De La Rosa has certainly

22  provided assistance for which ultimately the Government would ask

23  the Court to give him some credit.

24       The reason the Government has proposed to delay his

03:29PM  25  sentencing until at least May at this point is because

1  Mr. De La Rosa, as he knows, is anticipated to be a Government

2  witness in the case of *United States vs. Genaro Torres*, which this

3  Court just scheduled for May.

4          That case and that testimony, as I have explained to

03:29PM   5  Mr. De La Rosa, is the most valuable thing that he will do in the

6  course of his assistance in terms of getting credit, which the

7  Government recommends to the Court.

8          I have told him in our discussions on a number of

9  occasions that the Government, if he insisted, would not object to

03:30PM   10  a sentencing earlier than that.

11          I've also explained to him that I would not recommend

12  based on what has happened so far any reduction to the Court below

13  the mandatory minimum at this point, and that the Rule 35 option

14  was a possibility.

03:30PM   15          I've also explained to Mr. De La Rosa from the

16  Government's viewpoint in terms of what I think he wants to have

17  happen, that if he's going to spend any time in incarceration, I

18  believe this is not the geographical area that he wants to do it

19  and, ultimately, from the Government's standpoint in terms of

03:30PM   20  preparing for trial and continuing to have meetings with him, it

21  was problematic to sentence him, have the marshal ship him out of

22  the district and have to bring him back again for the other

23  proceedings that we would need him to participate in before he got

24  his final recommendation.

03:31PM   25          So it's really at this point in terms of that an issue

11

      1  that the Government is not -- if Mr. De La Rosa wants to do it --

      2  objecting to an earlier sentencing, but I am making clear, apart

      3  from the fact it hasn't even been discussed within my office yet,

      4  there is not going to be -- it has not been discussed within my

03:31PM  5  office yet, there is not going to be a recommendation any time

      6  before May to go below the mandatory minimum.

      7          And that position is based on the history of the case

      8  and the history of the Government's relationship with

      9  Mr. De La Rosa, which I don't think would be in anybody's interest

03:31PM 10  to detail right now.

    11          THE COURT: So are you saying that the bulk of the

    12  cooperation or the very significant part of it is the anticipated

    13  testimony in the *Torres* case?

    14          MR. SHERMAN: Yes.  And, again, just to make clear,

03:32PM 15  because I think Mr. Okay misspoke a couple times unintentionally,

    16  the plea agreement, as well as the presentence report, indicate

    17  that without acceptance of responsibility, the offense level was

    18  39, not 31.  And the guideline range in both the plea agreement

    19  and in the presentence report, the low end of it was 188 months.

03:32PM 20          In order to get to the 63 months, it would have required

    21  this Court to grant a motion of a ten level reduction from the

    22  plea agreement guideline level.  And without the testimony that's

    23  anticipated at this trial, there is no way in the world that the

    24  Government would even think about recommending a ten level

03:32PM 25  reduction for Mr. De La Rosa.

12

1           So that's where we are.

2           THE COURT: I understand all of that, and I think if we

3   go to May, if the Government is favorably impressed with

4   Mr. De La Rosa's testimony, so much so that the Government in its

03:33PM   5   wisdom moves under 5K and also under the statute, in fact, does

6   what the Government said it might do, that is, recommend a

7   sentence at the lowest end of level 26, that's not going to do

8   Mr. De La Rosa much good because he already would have apparently

9   served more than that.

03:33PM   10           MR. SHERMAN: Well, when that was put into the plea

11   agreement, it was put in without knowing totally what he would do

12   in the future and simply because there was some discussion about

13   having an understanding of where the Government might be willing

14   to go to.

03:34PM   15           There was never any promise by the Court or the

16   Government that he would ever get to that number.

17           THE COURT: I understand.

18           MR. SHERMAN: And I understand that the math works out

19   that he might not get realistically to 63 months, but if -- May is

03:34PM   20   still a long way from 188 months.

21           THE COURT: Well, it is.  Everything you say is certainly

22   well-taken by the Court.  And I think Mr. De La Rosa, if he does

23   everything in the world and everybody thinks this is just the best

24   type of cooperation since cooperation was created --

03:34PM   25           MR. SHERMAN: I would also point out, Your Honor --

1          THE COURT:  -- he's not going to get -- I don't want to

2    say the benefit of the bargain because that may not be exactly the

3    way to discuss it, but he had hoped if he did everything possible

4    that he could do and that you were impressed with it, you would

03:35PM   5    say to me, Judge, sentence him to the low end of the guideline

6    range, which is 63 months.

7          For this scenario, by the time I do that, he's going to

8    have served many months more than that.  Maybe that's just too

9    bad.  Maybe that's life, but --

03:35PM  10          MR. SHERMAN: I don't want to -- I'm not being cavalier

11   about it at all, but the reality is that Mr. De La Rosa, upon

12   completion of his sentence, is going to go into Immigration

13   custody, and so he's not getting out of custody.

14          And the Government, if he had finished his sentence,

03:35PM  15   would arrange for him to be held here until that trial occurred

16   under any circumstances.  So one way or the other he will be in

17   custody until at least May.

18          THE COURT: All right.  Well, I guess the other thing --

19   is Mr. De La Rosa at Batavia or Monroe County?

03:35PM  20          MR. OKAY: Actually, he's in Allegany County.

21          THE COURT: Allegany County.  Well, some defendants

22   prefer to get to an institution where they have some programs

23   other than a maximum facility.  I don't know if the Government

24   needs Mr. De La Rosa here each and every day between now and May.

03:36PM  25          But I guess the final -- not the final thing, but one of

14

1    the final things I might say, Mr. De La Rosa, is that if you keep

2    doing the right thing here, continue to cooperate, the Government

3    thinks it's important that you testify in this *Torres* case.  If

4    you don't do that, you're not going to get much of any

03:36PM    5    consideration from the Government.

6           But if you do that, and the Government makes a motion to

7    me under both what's called a "5K motion" and also under the

8    statute where they say to me, Judge, Mr. De La Rosa's done so well

9    we think you could go below the statutory minimum of 10 years,

03:37PM    10    once that happens I don't necessarily have to follow what the

11    Government recommends.

12           They could say, Judge, sentence him to eight years.  I

13    could say, no, I think it should be seven or six or five.  I can

14    also say it should be higher, but I guess the point I'm trying to

03:37PM    15    make is, believe it or not, the Court has some say in this, too,

16    if the Government is happy with what you do and files motions

17    which allow me to go below the statutory minimum.  The guidelines

18    are guidelines.  I always have the ability for a stated reason to

19    not sentence within them.

03:38PM    20           So I know it's been a long time and it looks like it's

21    still going to be a couple months, I had forgotten about

22    apparently an Immigration detainer.  So I hope, as frustrated as

23    you are, you don't want to jump into something that may undo all

24    of this and result in you having a longer sentence than you might

03:38PM    25    otherwise have.  That's the danger here.  That, you know, beware

1  of what you ask for.  If you want to withdraw your plea, there's a

2  lot of parts of this plea agreement that go down the drain, too.

3         So maybe, I mean, if the request is you be sentenced, I

4  guess I could do that, but it looks like it wouldn't be less than

03:38PM  5  10 years.  May sound like a long way away, especially if you're in

6  jail, but you're getting -- you're getting closer.  And the more

7  you do good, the more you help the Government, the more ability I

8  might have to give you a break.

9         THE DEFENDANT: Excuse me, Your Honor.  I have had

03:39PM  10  several communications with my attorney, and I have always

11  communicated to him that I am not against continuing with my

12  cooperation.

13         THE COURT: Good, good.

14         THE DEFENDANT: I would like to just go back and

03:40PM  15  apologize because I do not know about the laws.  In October of

16  2008, on October 14th, that was the day that I pled guilty.  The

17  explanation that was given to me pertaining to the plea agreement

18  was very different the one that I am hearing right now.

19         I'm not telling you that my lawyer explained to me that

03:41PM  20  I had -- that I had 63 months for negotiations.  He never told me

21  that.  The only thing he explained to me was that if we cooperated

22  with the Government, we would obtain or get 63 months if the

23  Government puts forth that motion.

24         One of the main reasons why I also pled guilty, I just

03:41PM  25  want to make this clear, was because when my attorney was going to

16

1  step out of the meeting that we had on October 14th, I heard

2  someone say to me, "You are Latino, you are Dominican, what do you

3  think about 12 people who are going to be the jury?  What do you

4  think is going to happen if you go to trial? I think that just for

03:42PM  5  being a Dominican, they will find you guilty."

6         One of the other reasons was the drug program that was

7  if the Government allowed me to plead, because I did not know how

8  much time I had to do this, but that was one of the main reasons

9  why I pled guilty.

03:43PM  10        I sent you a letter in the summer explaining to you in

11  Spanish and English.  In the Spanish letter I explained to you,

12  perhaps it was wrongdoing on my part if I said something about my

13  attorney, but I want to clarify this right now.  My lawyer never

14  at any time said to me that I had 63 months.

03:44PM  15        MR. OKAY: Your Honor, perhaps --

16        THE COURT: What do you mean by that last statement?  I

17  don't understand when you said your lawyer never said you had 63

18  months.

19        THE DEFENDANT: In the sense that the letter that I sent

03:44PM  20  to you saying -- saying that my attorney had said 63 months, 63

21  months, perhaps it was not explained well to me.  63 months, as

22  the Government says, will be when I am done with my cooperation.

23  Or he will -- he will ask for that motion, depending on what he

24  says, but the letter that I sent you, it was not well-expressed.

03:45PM  25        THE COURT: All right.  Well, thank you for your apology.

17

1    You don't have to apologize.  You're confused.  That's why we're

2    here.

3             At the time of the plea, the plea agreement was

4    translated for you by a different interpreter, and the plea

03:45PM    5    agreement does not anywhere say that you were definitely going to

6    get 63 months.  Maybe you hoped that if you did everything, that

7    that's what the sentence would be actually.

8             If you do everything, the Court has the ability to

9    sentence even below 63 months if the Government makes the motion

03:46PM    10   and asks me to go below the statute.  I'm not saying that's what

11   I'm going to do, but I have the power to do that.

12            So I'm glad to hear that you want to continue to

13   cooperate; is that correct?

14            THE DEFENDANT: Yes, sir.

03:46PM    15            THE COURT: Because I think that's important to the

16   Government and, therefore, it's important to you.

17            Without a plea agreement and without the Government

18   asking me to give you leniency, you're looking at big time, you're

19   looking at a lot of time.  And although May is six months away, I

03:47PM    20   don't think it will be wasted time in the sense that it counts

21   toward whatever sentence I end up giving you.

22            So I don't hear you to say now you want to change your

23   mind about pleading guilty; is that correct?

24            THE DEFENDANT: Correct.

03:47PM    25            THE COURT: Okay.  Well, I think that's because -- it's a

18

1    good thing because I think if you wanted to withdraw your plea and

2    if I granted it, which is not guaranteed, it certainly could

3    affect everything you've done up to this point and maybe would

4    affect your ability to cooperate.

03:48PM   5         So I think we've had a good talk here.  I will not

6    forget you.  I have set the trial in May.  It's regrettable that I

7    couldn't set it sooner, but that was my fault, and I think it will

8    be here soon enough.

9         So are we all okay now?

03:48PM  10         THE DEFENDANT: Yes, sir.

11         MR. OKAY: Your Honor, is there any way the Court could

12   make a recommendation to him -- to have Mr. De La Rosa moved to

13   Batavia for a couple of reasons?  One, it's not because the food

14   there is better, but also he's down now -- it's a two hour drive

03:49PM  15   for me to get down there to Allegany County from my office in

16   Batavia, and I have to go down with an interpreter.  So that's,

17   you know --

18         THE COURT: I will recommend it.  I don't know -- there's

19   a lot of issues that go into where inmates are placed; some have

03:49PM  20   to do with so-called enemies, if there are other people in the

21   jail that he might be cooperating against, that's one factor.  We

22   don't have unlimited bed space.  This is not like the Sheraton

23   that we can move people willy-nilly.

24         MR. OKAY: I would also make the request --

03:49PM  25         THE COURT: I'm not sure at this point until we get close

1    to sentencing, and I guess more especially close to trial, perhaps

2    the Government has an interest in having Mr. De La Rosa not down

3    in Allegany County, but in Batavia.

4         MR. OKAY: Also, my understanding is that Batavia there

03:49PM   5    is some programming that's available to the inmates there whereas

6    in Allegany County there's nothing; there's not even English

7    classes in Allegany County, for example.  So I appreciate that.

8         MR. SHERMAN: Your Honor, until very recently, because of

9    separation issues, Mr. De La Rosa could not go to Batavia.  I have

03:50PM   10   spoken to Deputy Marshal Pfohl about the fact that the current

11   population at Batavia, at least as far as I understand it, would

12   not require any separation for Mr. De La Rosa at Batavia.  They

13   still have some serious space issues, but I have spoken to him

14   about possibly getting Mr. De La Rosa moved to Batavia from

03:50PM   15   Allegany County.

16        THE COURT: Well, I would urge the Government to do that,

17   to work with the marshals.  I think it would help the Government

18   as they get ready for trial; it would help Mr. Okay; and I think

19   apparently it would help Mr. De La Rosa.

03:50PM   20        Sir, we're trying to get you moved a little closer here

21   to Batavia where they have fine dining, all right?

22        THE DEFENDANT: Thank you, sir.

23        MR. OKAY: Thank you very much, Your Honor.

24        THE COURT: All right, so stick with it.  We're getting

03:51PM   25   close and we'll look forward to seeing you in a couple of months

20

1   when you come here and testify.

2           MR. OKAY:  Are we going to set a sentencing date now or

3   is it going to be down the road or --

4           THE COURT: Well, I assume from our discussion it's --

03:51PM    5   you're content to wait until after the May trial?  I can do it

6   pretty quickly after that.  I would think what happens there is a

7   matter of a few short days.  I've got the presentence report.  All

8   I need is the Government's recommendation.

9           I don't hear you to say you want him to be sentenced now

03:51PM   10   and just get the 10 years?

11          MR. OKAY: We would not be making that request at this

12   point, absolutely not.

13          THE COURT: So thank you, sir.  We will try to get you

14   moved and we'll see you in a couple months.

03:52PM   15          MR. OKAY: Thank you.

16          THE COURT: We are adjourned without date.

17          (WHEREUPON, the proceedings adjourned at 3:52 p.m.)

18                         *    *    *

19                  CERTIFICATE OF REPORTER

20      I certify that the foregoing is a correct transcript to the

21   best of my ability of the record of proceedings in the

22   above-entitled matter.

23

24   S/ Christi A. Macri

25   Christi A. Macri, FAPR-RMR-CRR-CRI
    Official Court Reporter